The Honorable Robert S. Lasnik

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| PARROT S.A. and PARROT DRONES S.A.S., | NO.    2:18-cv-00867-RSL |
| Plaintiffs, | **ANSWER, COUNTERCLAIMS AND THIRD-PARTY COMPLAINT BY GABRIEL TORRES** |
| v. | |
| GABRIEL TORRES, an individual, | |
| Defendant. | <u>JURY DEMAND</u> |
| GABRIEL TORRES, | |
| Counterclaim and Third-Party Plaintiff, | |
| v. | |
| PARROT S.A., a French corporation; PARROT DRONES S.A.S., a French corporation; MICASENSE, INC., a California corporation; GILLES LABOSSIERE, an individual; and HENRI SEYDOUX, an individual, | |
| Counterclaim / Third-Party Defendants. | |

ANSWER, COUNTERCLAIMS AND THIRD-PARTY
COMPLAINT BY GABRIEL TORRES - 1
2:18-cv-00867-RSL

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington  98101-2272
(206) 749-0500

## ANSWER

Gabriel Torres responds to the First Amended Complaint ("FAC") filed by Plaintiffs Parrot S.A. and Parrot Drones S.A.S. ("Parrot") as follows, in paragraphs numbered to correspond with those of the FAC. All allegations not expressly admitted are denied.

### I.     NATURE OF THE ACTION

1.     Admit.

2.     Torres admits that (a) Parrot S.A. initially invested in MicaSense, Inc. ("MicaSense") in 2014 and subsequently made a further investment in MicaSense in the Fall of 2015; (b) MicaSense, Torres and the two other founders of MicaSense (collectively, the "Founders"), were defendants in the AV Litigation, which lawsuit was filed in the Spring of 2015;[1] and (c) the allegations made in the AV Litigation and the responses to such allegations, including denials, are as set forth in the pleadings contained in the court docket, which are the best evidence of the same. Except as expressly admitted, the allegations of Paragraph 2 are denied.

3.     Torres admits that (a) Parrot S.A. did due diligence in 2015, including with respect to the AV Litigation, which included requesting and obtaining information from MicaSense and the Founders; and (b) Parrot S.A. made a further investment in MicaSense in October 2015, the terms of which investment are set forth in the relevant investment documents, including the Series A-2 Preferred Stock Purchase Agreement (the "SPA"), Shareholders Agreement, Founder Executive Employment Agreements, Founder Common Stock Redemption Agreement, and Escrow Agreement. Torres denies the allegation that he made false representations or omitted material information, and he likewise denies the allegations of purported intent on his part. Torres lacks knowledge sufficient to respond to Parrot's allegation of purported reasonable reliance and, therefore, denies the same. Except as expressly admitted, the allegations of Paragraph 3 are denied.

---

[1] *AeroVironment, Inc. v. Torres, et al.*, Ventura County Superior Court, No. 56-2015-00465460.

ANSWER, COUNTERCLAIMS AND THIRD-PARTY
COMPLAINT BY GABRIEL TORRES - 2
2:18-cv-00867-RSL

4.      Torres admits that (a) the SPA contains representations and warranties by the Founders, which are as set forth in the SPA; and (b) the SPA contains an indemnification provision, by which the Founders of MicaSense agreed to certain indemnification obligations as set forth therein.  Except as expressly admitted, the allegations of Paragraph 4 are denied.

5.      Torres admits that a jury trial regarding certain matters in the AV Litigation took place in 2018 and that the jury's verdict is the best evidence of its contents.  Except as expressly admitted, the allegations of Paragraph 5 are denied.

6.      Torres denies that Parrot has suffered any cognizable loss, much less "substantial losses in connection with or arising from the AV Litigation that are not covered by insurance" and, as a result, Torres is not responsible for indemnifying non-existent losses.

## II.      JURISDICTION AND VENUE

7.      Paragraph 7 states a legal conclusion to which no response is required.  To the extent a response is required, Torres admits that he resides in this district, that MicaSense is headquartered in Seattle, Washington, and that certain of the allegations of the complaint concern alleged events occurring in this district.

8.      Paragraph 8 states a legal conclusion to which no response is required.  To the extent a response is required, Torres admits that Parrot is headquartered in Paris, France and that he is a resident Washington State, and that Parrot has alleged a claim under a federal statute.  Torres lacks information sufficient to respond to Parrot's allegation regarding the amount in controversy with respect to the asserted claims and, therefore, denies the same.

9.      Paragraph 9 states a legal conclusion to which no response is required.  To the extent a response is required, Torres admits that he resides in this district and that MicaSense is headquartered and does business in this district.

## III.      FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

10.     Torres denies the first sentence of Paragraph 10 and admits the second sentence.

ANSWER, COUNTERCLAIMS AND THIRD-PARTY
COMPLAINT BY GABRIEL TORRES - 3
2:18-cv-00867-RSL

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington  98101-2272
(206) 749-0500

11.     Torres admits the first sentence of Paragraph 11 and further admits that he entered into a Patent and Confidentiality Agreement with AV when he was first hired.  Except as expressly admitted, the allegations of Paragraph 11 are denied.

12.     Torres denies the first sentence of Paragraph 12.  With regard to the second sentence, Torres admits that he and Justin McAllister and Jeff McBride (collectively, the "Founders") founded MicaSense, Inc, which was incorporated in California in 2014.  Except as expressly admitted, the allegations of Paragraph 12 are denied.

13.     Torres admits that (a) in June 2014, the Founders met with representatives of Parrot and discussed the possibility of Parrot investing in MicaSense; and (b) Parrot invested in MicaSense pursuant to the Series A Preferred Stock Purchase Agreement dated October 30, 2014, the terms of which are as set forth therein.  Except as expressly admitted, the allegations of Paragraph 13 are denied.

14.     Torres denies the first sentence of Paragraph 14 and admits that AV filed a complaint initiating the AV Litigation on March 20, 2015.  Except as expressly admitted, the allegations of Paragraph 14 are denied.

15.     Torres admits that AV's Complaint made certain allegations, which are as set forth in that pleading.  Except as expressly admitted, the allegations of Paragraph 15 are denied.

16.     Torres admits that AV's Complaint made certain allegations, which are as set forth in that pleading.  Except as expressly admitted, the allegations of Paragraph 16 are denied.

17.     Torres admits that AV's Complaint made certain allegations, asserts certain claims, and requests certain relief, all as set forth in that pleading.  Except as expressly admitted, the allegations of Paragraph 17 are denied.

18.     Torres admits that Parrot S.A. initially invested in MicaSense in 2014 and, after taking steps to actively block additional investment by third parties, subsequently made a further investment in MicaSense in October 2015, the terms of which investment are set forth in the relevant investment documents, including the Series A-2 Preferred Stock Purchase Agreement (the "SPA"), Shareholders Agreement, Founder Executive Employment

ANSWER, COUNTERCLAIMS AND THIRD-PARTY
COMPLAINT BY GABRIEL TORRES - 4
2:18-cv-00867-RSL

Agreements, Founder Common Stock Redemption Agreement, and Escrow Agreement. Except as expressly admitted, the allegations of Paragraph 18 are denied.

19.      Torres admits that Parrot S.A. did due diligence in 2015, including with respect to the AV Litigation, which included requesting and obtaining information from MicaSense and the Founders. Torres denies the allegation that he made any false representations or failed to disclose material information. Torres lacks knowledge sufficient to respond to Parrot's allegation of purported reasonable reliance and, therefore, denies the same. Except as expressly admitted, the allegations of Paragraph 19 are denied.

20.      Torres admits that (a) he met with counsel—litigation counsel for the defendants in the AV Litigation and Steve Ormond (counsel to MicaSense, the Founders, Parrot S.A. and Yannick Levy in connection with legal issues arising in the context of the AV Litigation)—on or about April 14, 2015 and that in this meeting he generally discussed, in a privileged context issues relating to the defense of the AV Litigation, including AV's business and scope, his plans to form MicaSense and the timing of the same, and related and subsequent development of technology. Torres further admits, on information and belief and to the best of his recollection, that (a) Ormond subsequently sent an email that contained some summary notes regarding this meeting, the substance of which is as set forth in such notes; and (b) Torres responded to Ormond's email, the substance of which response is as set forth in Torres' email. Except as expressly admitted, the allegations of Paragraph 20 are denied.

21.      Torres admits, on information and belief and to the best of his recollection, that (a) in April 2015, MicaSense was, in coordination with defense counsel, drafting and revising a potential press release related to the litigation brought by AV; and (b) Torres provided comments regarding a potential press release on or about April 19, 2015, in the context of a privileged email communication, which comments are as evidenced in such email communication. Except as expressly admitted, the allegations of Paragraph 21 are denied.

22.      Torres admits, on information and belief and to the best of his recollection, that (a) in May 2015, MicaSense was, in coordination with defense counsel, continuing to draft and

revise a potential press release related to the litigation brought by AV; and (b) Torres provided comments regarding a potential press release on or about May 3, 2015, in the context of a privileged email communication, which comments are as evidenced in such email communication.  Except as expressly admitted, the allegations of Paragraph 22 are denied.

23.     Torres admits that (a) Parrot S.A. did due diligence in 2015, including with respect to the AV Litigation, which included requesting and obtaining information from MicaSense and the Founders; (b) Steve Ormond (counsel to MicaSense, the Founders, Parrot S.A. and Yannick Levy in connection with legal issues arising in the context of the AV Litigation) made inquiry of litigation counsel for the defendants in the AV Litigation regarding various issues in the AV Litigation; and (c) Torres communicated with counsel (both litigation counsel and Steve Ormond) truthfully and to the best of his knowledge and recollection. Except as expressly admitted, the allegations of Paragraph 23 are denied.

24.     Torres admits that on or about September 1, 2015, litigation counsel for the defendants in the AV Litigation provided a chronology to Steve Ormond (counsel to MicaSense, the Founders, Parrot S.A. and Yannick Levy in connection with legal issues arising in the context of the AV Litigation), which chronology was prepared by litigation counsel, is the best evidence of its contents, and is privileged.  Torres denies the allegation that he made any false representations or failed to disclose material information to Parrot S.A.  Except as expressly admitted the allegations of Paragraph 24 are denied.

25.     Torres lacks knowledge sufficient to respond to the allegations of Paragraph 25 and, therefore, denies the same.

26.     Torres admits that Parrot S.A. invested in MicaSense in October 2015, the terms and result of which investment are as set forth in and provided for by the relevant investment documents, including the Series A-2 Preferred Stock Purchase Agreement dated October 8, 2015 (the "SPA"), Shareholders Agreement, Founder Executive Employment Agreements, Founder Common Stock Redemption Agreement, and Escrow Agreement.  Torres admits, on information and belief, that Parrot S.A.'s ownership interests in MicaSense were transferred to

ANSWER, COUNTERCLAIMS AND THIRD-PARTY
COMPLAINT BY GABRIEL TORRES - 6
2:18-cv-00867-RSL

1   Parrot Drones S.A.S. in or around November 2015.  Except as expressly admitted, the

2   allegations of Paragraph 26 are denied.

3          27.     Torres admits that the claims asserted in the AV Litigation temporally

4   concerned the time period when he and the other Founders were employed by AV and

5   thereafter, and prior to the date of Parrot S.A.'s initial investment in MicaSense in 2014.

6   Torres further admits (a) on information and belief, that Parrot S.A. did not have first-hand

7   knowledge of the circumstances of his and the other Founders' employment by AV and their

8   respective work as employees of AV; and (b) pursuant to Section 7.2(c) of the SPA, the

9   Founders undertook an indemnification obligation as set forth therein.  Except as expressly

10  admitted, the allegations of Paragraph 27 are denied.

11         28.     Torres admits that Section 7.2(a) of the SPA identifies and defines the

12  "Indemnified Parties" as set forth therein.  Except as expressly admitted, the allegations of

13  Paragraph 28 are denied.

14         29.     Torres admits that (a) Section 2 of the SPA states representations and warranties

15  by MicaSense as set forth therein, (b) Section 3 of the SPA states representations and

16  warranties by the Founders as set forth therein, and (c) Section 7.2 of the SPA is an

17  indemnification provision that relates, in part, to the representations and warranties in Section 2

18  and Section 3.  Except as expressly admitted, the allegations of Paragraph 29 are denied.

19         30.     Torres admits that Section 3.7 of the SPA is an exclusive remedy provision that

20  includes a carve-out regarding potential claims "based on a Founder's fraud or willful

21  misconduct."  Except as expressly admitted, the allegations of Paragraph 30 are denied.

22         31.     Denied.

23         32.     Torres denies Plaintiffs' inaccurate characterization of the "evidence at trial,"

24  *i.e.*, the evidence and testimony admitted into evidence during the AV Litigation, including but

25  not limited to the implication or allegation regarding the extent to which AV was interested in

26  or doing work in the agricultural sector prior to the time Torres and the other Founders

27

ANSWER, COUNTERCLAIMS AND THIRD-PARTY
COMPLAINT BY GABRIEL TORRES - 7
2:18-cv-00867-RSL

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington  98101-2272
(206) 749-0500

1  concluded their employment with AV.  Except as expressly admitted, the allegations of

2  Paragraph 32 are denied.

3      33.    Torres denies Plaintiffs' inaccurate characterization of the "evidence at trial,"

4  *i.e.*, the evidence and testimony admitted into evidence during the AV Litigation, including but

5  not limited to the implication or allegation that the Founders used "AV information" to develop

6  MicaSense, and that "virtually all of Torres's plans" regarding MicaSense "were firmed up

7  before he left AV."  Torres admits that, during his employment with AV, he reviewed publicly-

8  available information regarding multispectral cameras and applications, including some pricing

9  information, and he wrote a draft market analysis and draft business plan for a company that

10 would later be MicaSense.  Except as expressly admitted, the allegations of Paragraph 33 are

11 denied.

12     34.    Torres denies Plaintiffs' inaccurate characterization of the "evidence at trial,"

13 *i.e.*, the evidence and testimony admitted into evidence during the AV Litigation, including but

14 not limited to the allegation that Torres's understanding that AV did not have IP rights

15 regarding MicaSense products or software given that these products were developed after the

16 Founders' employment with AV was concluded and that no AV information was used to

17 develop such products or software was a misrepresentation.  Except as expressly admitted, the

18 allegations of Paragraph 34 are denied.

19     35.    Denied.

20     36.    Torres admits that (a) a jury verdict was returned in the AV Litigation, which

21 verdict is the best evidence of its contents; (b) AV sought injunctive relief which request was

22 never ruled on by the court; and (c) the AV Litigation was settled in May 2018 and the Parrot

23 representatives who are Directors of MicaSense approved and consented to such settlement, as

24 a result of which the AV Litigation was dismissed with prejudice and no judgment was entered.

25 Except as expressly admitted, the allegations of Paragraph 36 are denied.

26

27

ANSWER, COUNTERCLAIMS AND THIRD-PARTY
COMPLAINT BY GABRIEL TORRES - 8
2:18-cv-00867-RSL

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington  98101-2272
(206) 749-0500

37.     Torres admits that Section 7.2(c) of the SPA is an indemnification provision by which the Founders undertook an indemnification obligation as set forth therein.  Except as expressly admitted, the allegations of Paragraph 37 are denied.

40.     Denied.[2]

## IV.     CLAIMS FOR RELEIF

**A.     Count I – Contractual Indemnity for AV Litigation Losses.**

41.     In response to Paragraph 41, Torres restates and incorporates by reference his responses to Paragraphs 1 – 40 of the FAC as set forth above.

42.     Torres admits that the SPA is a valid contract and its terms are as set forth therein.  Except as expressly admitted, the allegations of Paragraph 42 are denied.

43.     Torres admits that Section 7.2(c) of the SPA concerns an indemnification obligation of the Founders regarding the AV Litigation and the terms of that provision are as set forth therein.

44.     Denied.

45.     Paragraph 45 is an allegation regarding Parrot's hypothetical future conduct and requires no response.  To the extent a response is required, Torres denies that Parrot has incurred any Losses or any recoverable losses.

**B.     Count II – Breach of Contractual Representation.**

46.     In response to Paragraph 46, Torres restates and incorporates by reference his responses to Paragraphs 1 – 45 of the FAC as set forth above.

47.     Torres admits that Section 3 of the SPA contains certain representations by the Founders, which are as set forth therein.  Except as expressly admitted, the allegations of Paragraph 47 are denied.

---

[2] *N.b.*, Plaintiffs' First Amended Complaint does not contain paragraphs numbered 38 or 39.

ANSWER, COUNTERCLAIMS AND THIRD-PARTY
COMPLAINT BY GABRIEL TORRES - 9
2:18-cv-00867-RSL

48.     Torres admits that Section 7.2(c) of the SPA concerns an indemnification obligation of the Founders and the terms of that provision are as set forth therein.  Except as expressly admitted, the allegations of Paragraph 48 are denied.

49.     Denied.

**C.    Count III – Violation of § 10(b) of the Securities Exchange Act of 1934 and SEC Rule 10b-5.**

50.     In response to Paragraph 50, Torres restates and incorporates by reference his responses to Paragraphs 1 – 49 of the FAC as set forth above.

51.     Denied.

52.     Denied.

53.     Denied.

**D.    Count IV – Common Law Fraud.**

54.     In response to Paragraph 54, Torres restates and incorporates by reference his responses to Paragraphs 1 – 53 of the FAC as set forth above.

55.     Denied.

56.     Torres admits that Parrot requested information regarding the Founders' work at and departure from AV and the AV Litigation.  Torres admits, on information and belief, that the request for such information was part of the continued due diligence Parrot undertook regarding MicaSense.  Except as expressly admitted, the allegations of Paragraph 56 are denied.

57.     Torres lacks information sufficient to respond to the allegations of Paragraph 57 and, therefore, denies the same.

58.     Torres lacks information sufficient to respond to the allegations of Paragraph 58 and, therefore, denies the same.

59.     Torres lacks information sufficient to respond to the allegation of Paragraph 59 regarding Parrot's purported reliance and, therefore, denies the same, and Torres denies that Parrot has suffered any recoverable damages.

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington  98101-2272
(206) 749-0500

**E.      Plaintiffs' Prayer for Relief.**

Torres denies that Plaintiffs are entitled to any of the relief they request, including without limitation (a) damages, however characterized; (b) attorney's fees or costs, expenses and/or expert fees; or (c) any other form of relief, including equitable relief.

<u>**ADDITIONAL DEFENSES**</u>

A.      One or more of Plaintiffs' causes of action fails to state claims upon which relief can be granted.

B.      On or more of Plaintiffs' causes of action is barred by applicable statutes of limitation.

C.      On information and belief, Plaintiffs have suffered no compensable injury or damages.

D.      If Plaintiffs have been damaged, which is denied, such damages were, on information and belief, caused in whole or part by the acts or omissions, including superseding or intervening acts or conduct, of other persons or entities over whom Torres has no control.

E.      If Plaintiffs have been damaged, which is denied, Plaintiffs have failed to mitigate their alleged damages.

F.      One or more of Plaintiffs' causes of action is barred in whole or part by the doctrines of waiver and/or estoppel.

G.      Plaintiffs cannot obtain equitable relief because of their unclean hands.

H.      Torres reserves all affirmative defenses under Rule 8(c) of the Federal Rules of Civil Procedure, and any other defenses, at law or in equity, that may now exist or in the future be available based on discovery and further factual investigation in this case.

<u>**COUNTERCLAIM AND THIRD-PARTY COMPLAINT**</u>

For his Counterclaims and Third-Party Complaint, Gabriel Torres alleges as follows:

**A.      Parties.**

1.1      Gabriel Torres ("Torres") is a Founder and the former CEO of MicaSense, Inc.

ANSWER, COUNTERCLAIMS AND THIRD-PARTY
COMPLAINT BY GABRIEL TORRES - 11
2:18-cv-00867-RSL

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington  98101-2272
(206) 749-0500

1.2     MicaSense, Inc. ("MicaSense") is a California corporation that is headquartered in Seattle, Washington.

1.3     Parrot S.A. is a French company that invested in MicaSense in 2014 and 2015.

1.4     Parrot Drones S.A.S is a French company that is a subsidiary of Parrot S.A. and, on information and belief, is the transferee of Parrot's equity interest in MicaSense.

1.5     Henri Seydoux is the Chairman and CEO of Parrot S.A., the President of Parrot Drones S.A.S., and a Series A Director of MicaSense.

1.6     Gilles Labossière is Executive Vice President and COO of Parrot S.A. and a Series A Director of MicaSense.  On information and belief, Labossière is presently the acting or interim CEO of MicaSense.

**B.      Jurisdiction and Venue.**

1.7     Jurisdiction and venue are proper in this Court pursuant to 28 U.S.C. § 1367(a) and 28 U.S.C. § 1391(b).

**C.      Facts.**

1.8     Torres, Justin McAllister and Jefferson McBride (the "Founders") founded MicaSense in 2014.

1.9     Parrot S.A. invested in MicaSense in 2014 pursuant to a Series A Preferred Stock Purchase Agreement by and between Parrot S.A., MicaSense, and the Founders.

1.10    Section 4 of Article V of the MicaSense, Inc. Amended and Restated Articles of Incorporation as filed with the California Secretary of State on October 29, 2014 is entitled "Indemnification."  This section provides that "[t]o the fullest extent permitted by applicable law, [MicaSense] is authorized to provide indemnification of (and advancement of expenses to) directors, officers, and agents of [MicaSense] . . . through Bylaw provisions, agreements with such agents or other persons, vote of shareholders or disinterested directors or otherwise, in excess of the indemnification and advance otherwise permitted by the California Corporations Code.

ANSWER, COUNTERCLAIMS AND THIRD-PARTY
COMPLAINT BY GABRIEL TORRES - 12
2:18-cv-00867-RSL

1     1.11     Section 7 of Article V of the Amended and Restated Bylaws of MicaSense, Inc.,

2  as adopted by Action by Unanimous Written Consent of the Board of Directors of MicaSense,

3  Inc., effective as of October 29, 2014, is entitled "Indemnification of Corporate Agent."  This

4  section provides as follows:

5               The Corporation shall indemnify each of its agents against
               expenses, judgments, fines, settlements and other amounts,
6               actually and reasonably incurred by such person in connection with
               having been made or having been threatened to be made a party to
7               a proceeding by reason of the fact that such person is or was an
               agent of the Corporation to the fullest extent permissible under the
8               California Corporations Code and the Corporation shall advance
               the expenses reasonably expected to be incurred by such agent in
9               defending any such proceeding upon receipt of the undertaking
               required by subdivision (f) of Section 317 of the California
10              Corporations Code.

11
   The October 29, 2014 Written Consent also specifically authorized MicaSense to enter into
12
   indemnification agreements with its officers and directors.
13
      1.12     Accordingly, effective October 30, 2014, MicaSense (the "Company") and
14
   Torres ("Indemnitee") entered into an Indemnification Agreement.[3]  As set forth in Section 1 of
15
   the Indemnification Agreement, MicaSense agreed "to hold harmless and indemnify
16
   Indemnitee to the fullest extent permitted by law, as such may be amended from time to time."
17
   In relevant part, the Indemnification Agreement states as follows:
18
               Indemnitee shall be entitled to rights of indemnification provided
19              in this Section 1(a) if, by reason of his Corporate Status (as
               hereinafter defined), the Indemnitee is, or is threatened to be made,
20              a party to or participant in any Proceeding (as hereinafter defined)
               other than a Proceeding by or in the right of the Company.
21              Pursuant to this Section 1(a), Indemnitee shall be indemnified
               against all Expenses (as hereinafter defined), judgments, penalties,
22              fines and amounts paid in settlement actually and reasonably
               incurred by him, or on his behalf, in connection with such
23              Proceeding or any claim, issue or matter therein, if the Indemnitee
               acted in good faith and in a manner the Indemnitee reasonably
24              believed to be in or not opposed to the best interests of the
               Company, and with respect to any criminal Proceeding, had no
25

26

27  [3] MicaSense contemporaneously entered into Indemnification Agreements with the other Founders and the outside
   Director, a representative of Parrot S.A.

ANSWER, COUNTERCLAIMS AND THIRD-PARTY          SAVITT BRUCE & WILLEY LLP
COMPLAINT BY GABRIEL TORRES - 13                 1425 Fourth Avenue Suite 800
2:18-cv-00867-RSL                                Seattle, Washington  98101-2272
                                                        (206) 749-0500

reasonable cause to believe the Indemnitee's conduct was
unlawful.

*See* Indemnification Agreement, § 1(a).[4]

1.13   MicaSense also obligated itself to advance Expenses[5] for Torres as follows:

> Notwithstanding any other provision of this Agreement, the
> Company shall advance all Expenses incurred by or on behalf of
> Indemnitee in connection with any Proceeding by reason of
> Indemnitee's Corporate Status within thirty (30) days after the
> receipt by the Company of a statement or statements from
> Indemnitee requesting such advance or advances from time to
> time, whether prior to or after final disposition of such Proceeding.

*See* Indemnification Agreement, § 5.

1.14   Parrot S.A. made a further investment in MicaSense in October 2015, the terms
and result of which investment are as set forth in and provided for by the relevant investment
documents, including the Series A-2 Preferred Stock Purchase Agreement dated October 8,
2015 (the "SPA"), Shareholders Agreement, Founder Executive Employment Agreements,
Founder Common Stock Redemption Agreement, and Escrow Agreement.

1.15   The Shareholders Agreement includes a lock-up provision that prevents Torres
and all other holders of MicaSense stock other than Parrot (and its permitted assigns) from
selling, pledging or disposing of their stock, except as permitted by the specific terms of the
Shareholders Agreement.  In this respect, the Shareholders Agreement contains call rights in
favor of the "Investor" (Parrot and its permitted assigns), by which the Investor has the option,
as of April 1, 2019, to require Torres and the other holders of MicaSense stock (*e.g.*, the
Founders and other employees of MicaSense) to sell to the Investor all of their stock based

---

[4] In pertinent part, "Corporate Status" is defined as "the status of a person who is or was a director, officer,
employee, agent or fiduciary of the Company[.]"  *See* Indemnification Agreement, § 13.

[5] "Expenses" are defined to "include all reasonable attorneys' fees, retainers, court costs, transcript costs, fees of
experts, witness fees, travel expenses, duplicating costs, printing and binding costs, telephone charges, postage,
delivery service fees and all other disbursements or expenses of the types customarily incurred in connection with
prosecuting, defending, preparing to prosecute or defend, investigating, participating, or being or preparing to be a
witness in a Proceeding, or responding to, or objecting to, a request to provide discovery in any Proceeding."  *See*
Indemnification Agreement, § 13.

ANSWER, COUNTERCLAIMS AND THIRD-PARTY
COMPLAINT BY GABRIEL TORRES - 14
2:18-cv-00867-RSL

upon a specified call-put formula.[6]  The Investor gains a lower purchase price under the call-put formula and is thereby benefitted if and to the extent MicaSense's revenues are constrained or decreased and/or its expenses inflated or increased during 2018.

1.16     The Founder Executive Employment Agreement between MicaSense and Torres is effective as of October 8, 2015 (the "Employment Agreement").  The Employment Agreement provides that Torres's employment is at-will and it also includes certain provisions relating to the termination of Torres' employment.

1.17     If Torres terminates his employment for "Good Reason" (a defined term in the Employment Agreement) or if MicaSense terminates his employment for any reason other than "Just Cause" (a defined term in the Employment Agreement), then Torres receives certain compensation and benefits.  These include (a) accelerated vesting of certain equity, (b) voiding of the non-competition and non-solicitation provisions of the Employment Agreement, and (c) a severance payment equal to 4.5 months of Torres's then-current salary and payment of COBRA premiums for 6 months.  On the other hand, if MicaSense terminates Torres's employment for "Just Cause," then (i) Torres does not receive the foregoing compensation and benefits, (ii) all unvested shares of MicaSense common stock to which Torres is entitled are automatically forfeited, and (iii) Parrot's call rights under the Shareholders Agreement with respect to Torres' stock immediately vest and become exercisable at any time at 60% of the price resulting from the contractual call-put formula.

1.18     As set forth in the SPA, the Founders made certain representations and warranties and, in Section 7.2, undertook related indemnification obligations.

1.19     In connection with the SPA, each of the Founders, including Torres, entered into a Founder Common Stock Redemption Agreement whereby each Founder redeemed certain of his Founder Restricted Shares and was thereby entitled to receive payment for such shares.

---

[6] The Shareholders Agreement also contains a mirroring put right whereby the Holders of MicaSense stock have an option, as of April 1, 2019, to require Parrot to buy their MicaSense stock.

ANSWER, COUNTERCLAIMS AND THIRD-PARTY
COMPLAINT BY GABRIEL TORRES - 15
2:18-cv-00867-RSL

1.20    The Founder Common Stock Redemption Agreements also provided that each Founder would place in escrow a portion of the redemption payment to which he was entitled. The purpose of the escrow was to provide a potential source of payment for the indemnification obligation of Section 7.2 of the SPA.

1.21    Torres' Founder Common Stock Redemption Agreement provided for him to put in escrow approximately 55% of his redemption payment (the "Escrowed Amount").

1.22    Each of the Founder Common Stock Redemption Agreements states the

> The Escrowed Amount shall be promptly released to the Founder upon entry of a final, non-appealable order dismissing with prejudice or otherwise resolving with finality each of the claims asserted by the plaintiff at any time in the litigation initiated by or related to AeroVironment, Inc. (the "AV Litigation) or a settlement of the AV Litigation that is approved by the Company's Board of Directors (including the Series A Directors), and two-thirds of the Founders, voting in their capacity as Common Shareholders of the Company.

1.23    As contemplated by the Founders' Common Stock Redemption Agreements, MicaSense, the Founders, and Parrot S.A. entered into an Escrow Agreement with Wells Fargo, N.A. in October 2015.  The 2015 Escrow Agreement was executed by Henri Seydoux on behalf of Parrot S.A.

1.24    In April 2017, MicaSense, the Founders, and Parrot S.A. entered into an Escrow Agreement with JPMorgan Chase Bank, NA.  The 2017 Escrow Agreement was successor to and superseded the 2015 Escrow Agreement.  Under the 2017 Escrow Agreement, Torres was appointed as the "Founders Representative" with authority as agent and attorney-in-fact for the Founders with respect to the Escrow Agreement.  The 2017 Escrow Agreement was executed by Gilles Labossière on behalf of Parrot S.A.

1.25    The AV litigation was settled effective May 18, 2018 and the Parrot representatives who are Series A Directors of MicaSense (Seydoux and Labossière) approved and consented to such settlement, and Seydoux further approved and consented as the representative of Parrot Drones, S.A.S., and each the Founders approved and consented.

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington  98101-2272
(206) 749-0500

1.26     A joint stipulated stay of the AV Litigation was filed on May 18, 2018 and the AV Litigation was subsequently dismissed with prejudice on June 8, 2018 and no judgment was entered.

1.27     Other than a *de minimus* claim for attorney's fees pursuant to a contractual indemnification provision, Parrot has no cognizable loss or damage or out-of-pocket cost arising from the AV Litigation, including the settlement of the AV Litigation.

1.28     On June 7, 2018, MicaSense—as directed by Seydoux and Labossière—terminated Torres's employment, ostensibly for "Just Cause."  On information and belief, Labossière thereafter assumed the role of "acting" CEO of MicaSense.

1.29     By letter dated June 13, 2018, Torres, acting through counsel and in his capacity as Founders' Representative under the 2017 Escrow Agreement, requested that Parrot S.A. and MicaSense consent to and authorize distribution of the Escrowed Amount to the Founders in accordance with their respective percentages (the "Escrow Release Request").

1.30     The instant lawsuit was filed by Parrot S.A. and Parrot Drones S.A.S. on June 14, 2018.  The Complaint alleged claims against Torres for (a) contractual indemnity, (b) breach of contract, (c) violation of § 10b(b) of the Securities Exchange Act of 1934 and SEC Rule 10b-5, (d) common law fraud and (e) breach of fiduciary duty.  Each of these claims was asserted against Torres by reason of his Corporate Status as that term is defined in the Indemnification Agreement.  *See* Indemnification Agreement, §§ 1(a), 13; *see also* Cal. Corp. Code § 317(b); Complaint at ¶¶ 1, 2, 3, 18, 19, 20-27, 28-32.

1.31     Torres, through counsel, agreed to accept service of Parrot's Summons and Complaint and, pursuant to agreement of counsel, the parties agreed that Torres would have until July 26, 2018 to answer or otherwise respond to the Complaint.  An Acceptance of Service was filed with the Court on June 25, 2018.

1.32     By letter from Brendan Mangan of Davis Wright Tremaine LLP, plaintiffs' litigation counsel herein, dated June 25, 2018, Parrot S.A. and Parrot Drones S.A.S. declined the Escrow Release Request.

1.33    By letter dated June 29, 2018 to Aaron Thomson of Ashbaugh Beal LLP (MicaSense's outside counsel), Torres, acting through counsel, requested that MicaSense honor its obligations under the Indemnification Agreement and otherwise, and advance and reimburse the expenses incurred and to be incurred by Torres with respect to the instant lawsuit (the "Advancement Request").

1.34    By email dated July 3, 2018, Brendan Mangan, plaintiffs' litigation counsel herein, confirmed that MicaSense was represented by Aaron Thomson.

1.35    By subsequent email dated July 6, 2018, Gregory Hendershott of Davis Wright Tremaine LLP, plaintiffs' litigation counsel herein, advised that Davis Wright Tremaine was "retained by MicaSense in connection with the separation of Gabriel Torres and related matters."  On information and belief, the retention of Davis Wright Tremaine as counsel for MicaSense was directed by Henri Seydoux and/or Gilles Labossière and was done without the knowledge of MicaSense's Board of Directors.

1.36    By email dated July 9, 2018 to Aaron Thomson of Ashbaugh Beal LLP (MicaSense's outside counsel), Torres, acting through counsel, advised that he was considering the possibility of working in a sales/marketing/business development role for a company that makes and sells UAV (or drone) systems (the "UAV Company").  The UAV Company's primary business concerns mapping and surveying, and the UAV Company also has a small presence in the agricultural realm.  The UAV Company does not make multispectral cameras, rather it integrates MicaSense's RedEdge camera into its system and sells the whole system— *i.e.*, the UAV Company is a MicaSense partner and customer. Torres requested that, in order to avoid any misunderstanding or future dispute, MicaSense confirm that the UAV Company is not a "Competing Enterprise" as that term is utilized in Section 7 of Torres's Employment Agreement.

1.37    By email dated July 16, 2018, Gregory Hendershott of Davis Wright Tremaine LLP, plaintiffs' litigation counsel herein, responded to Torres's July 9 email, declined Torres' request regarding the UAV Company and asserted that Torres's proposed employment with the

UAV Company "would violate his contractual and possibly other obligations to MicaSense." Hendershott further asserted that MicaSense had "longstanding plans to expand its offerings into even more direct competition with [the UAV Company]" and "[t]hese product plans were a principal driver of the Parrot investment in MicaSense."

1.38    On July 24, 2018, at approximately 2:30 p.m., Parrot S.A. and Parrot Drones S.A.S. filed a First Amended Complaint (the "FAC").  In relevant part, the FAC removed the previously-alleged breach of fiduciary duty claim.

1.39    On July 24, 2018, at 3:06 p.m., Brendan Mangan of Davis Wright Tremaine LLP, plaintiffs' litigation counsel herein, sent a letter by email to Torres's counsel, which letter ostensibly "on behalf of MicaSense, Inc." declined Torres' Advancement Request.

## FIRST CAUSE OF ACTION

### (Breach of Contract – against MicaSense re: Employment Agreement)

1.40    Torres realleges and incorporates by reference the responses of Paragraphs 1-59 and the allegations of Paragraphs 1.1 – 1.39 above.

1.41    Torres and MicaSense are parties to the Employment Agreement, which is a valid contract and has specific and enforceable terms.

1.42    Torres has performed his obligations under the Employment Agreement.

1.43    MicaSense—as directed and controlled by Parrot S.A. and/or Parrot Drones S.A.S. by and through Henri Seydoux and Gilles Labossière—has breached the Employment Agreement by purporting to terminate Torres's employment for "Just Cause."

1.44    Torres has suffered damages as a result of MicaSense's breach of contract in an amount to be proved at trial, including but not limited to with respect to the Termination benefits provided for by the Employment Agreement.

## SECOND CAUSE OF ACTION

### (Willful Withholding of Wages – against MicaSense, Seydoux and Labossière)

1.45    Torres realleges and incorporates by reference the responses of Paragraphs 1-59 and the allegations of Paragraphs 1.1 – 1.44 above.

ANSWER, COUNTERCLAIMS AND THIRD-PARTY COMPLAINT BY GABRIEL TORRES - 19
2:18-cv-00867-RSL

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington  98101-2272
(206) 749-0500

1.46    MicaSense, Seydoux and Labossière have willfully refused and continue to willfully refuse to pay Torres his contractually-due wages under the Employment Agreement.

1.47    MicaSense, Seydoux and Labossière and each of them has violated RCW 49.52.050 by willfully withholding Torres' wages, and pursuant to RCW 49.52.070 are liable for exemplary damages equal to twice the amount of wages willfully withheld, plus litigation costs and attorneys' fees.

## THIRD CAUSE OF ACTION

### (Breach of Contract – against Parrot S.A. re: Escrow Agreement)

1.48    Torres realleges and incorporates by reference the responses of Paragraphs 1-59 and the allegations of Paragraphs 1.1 – 1.47 above.

1.49    Parrot, S.A., MicaSense, and the Founders are parties to the 2017 Escrow Agreement, which is a valid contract and has specific and enforceable terms, and where JP Morgan Chase Bank, NA is the designated Escrow Agent.

1.50    Torres, along with the other Founders, has performed his obligations under the 2017 Escrow Agreement.

1.51    Parrot S.A., by and through Henri Seydoux and Gilles Labossière, has breached the Escrow Agreement by declining the Escrow Release Request.

1.52    Torres has suffered damages as a result of Parrot S.A.'s breach of contract in an amount to be proved at trial, and not less than the Escrowed Amount.

## FOURTH CAUSE OF ACTION

### (Breach of Contract – against MicaSense re: Indemnification Agreement)

1.53    Torres realleges and incorporates by reference the responses of Paragraphs 1-59 and the allegations of Paragraphs 1.1 – 1.52 above.

1.54    Torres and MicaSense are parties to an Indemnification Agreement, which is a valid contract and has specific and enforceable terms.

1.55    Torres has performed his obligations under the Indemnification Agreement, and MicaSense's obligations thereunder have been triggered by the instant lawsuit.

ANSWER, COUNTERCLAIMS AND THIRD-PARTY
COMPLAINT BY GABRIEL TORRES - 20
2:18-cv-00867-RSL

1    1.56    Under the Indemnification Agreement, Torres is entitled to Advancement of his

2    Expenses with respect to the instant litigation.

3    1.57    MicaSense—as directed and controlled by Parrot S.A. and/or Parrot Drones

4    S.A.S. by and through Henri Seydoux and Gilles Labossière—has breached the Indemnification

5    Agreement by refusing Torres' Advancement Request.

6    1.58    Torres has suffered damages and will continue to suffer damages as a result of

7    MicaSense's breach of contract in an amount to be proved at trial, and he is also entitled to

8    litigation costs and attorneys' fees for enforcement of the Indemnification Agreement.

9    **FIFTH CAUSE OF ACTION**

10   **(Breach of Contract – against MicaSense re: Employment Agreement)**

11   1.59    Torres realleges and incorporates by reference the responses of Paragraphs 1-59

12   and the allegations of Paragraphs 1.1 – 1.58 above.

13   1.60    Torres and MicaSense are parties to an Employment Agreement, which is a

14   valid contract and has specific and enforceable terms.

15   1.61    In relevant part, the Employment Agreement contains a non-competition

16   provision that prohibits Torres, for the tenure of his employment and for twelve months after

17   termination, from working with or for or consulting to a "Competing Enterprise," which means

18   "any person engaged in a business or operation anywhere in the United States … which is

19   directly in competition with, or in the same line or lines of business as [MicaSense]."

20   1.62    If Torres employment is terminated by MicaSense for any reason other than

21   "Just Cause," then the non-competition provision is void and unenforceable.

22   1.63    As noted above, MicaSense—as directed and controlled by Parrot S.A. and/or

23   Parrot Drones S.A.S. by and through Henri Seydoux and Gilles Labossière—has breached the

24   Employment Agreement by purporting to terminate Torres's employment for "Just Cause."

25   1.64    As a separate but related matter, MicaSense—as directed and controlled by

26   Parrot S.A. and/or Parrot Drones S.A.S. by and through Henri Seydoux and Gilles

27   Labossière—has also breached the Employment Agreement by asserting a wrongful and

ANSWER, COUNTERCLAIMS AND THIRD-PARTY
COMPLAINT BY GABRIEL TORRES - 21
2:18-cv-00867-RSL

1  inaccurate interpretation of "Competing Enterprise" that is not grounded in factual reality and

2  is intended to prevent Torres from obtaining gainful employment.

3       1.65    The UAV Company is a competitor to Parrot and to senseFly, a wholly-owned

4  subsidiary of Parrot, but the UAV Company is not a competitor to MicaSense and, thus, is not a

5  "Competing Enterprise."  Moreover, the Employment Agreement expressly states that "nothing

6  herein shall be construed as prohibiting [Torres] from generally working in the UAV industry

7  or performing data processing, so long as such activities are not with a Competing Enterprise."

8       1.66    Torres has suffered damages as a result of MicaSense's breach of contract in an

9  amount to be proved at trial.

10              ## SIXTH CAUSE OF ACTION

11      **(Breach of the Duty of Good Faith and Fair Dealing – against MicaSense)**

12      1.67    Torres realleges and incorporates by reference the responses of Paragraphs 1-59

13  and the allegations of Paragraphs 1.1 – 1.66 above.

14      1.68    Under the applicable law, every contract contains an implied covenant of good

15  faith and fair dealing.

16      1.69    MicaSense's actions as set forth herein—and as directed and controlled by

17  Parrot S.A. and/or Parrot Drones S.A.S. by and through Henri Seydoux and Gilles

18  Labossière—are in breach of the covenant of good faith and fair dealing that is implied in the

19  Employment Agreement and also in the Indemnification Agreement.

20          (a)     The Employment Agreement provides that if MicaSense terminates his

21  employment for any reason other than "Just Cause" (a defined term in the Employment

22  Agreement), then Torres receives certain compensation and benefits, including accelerated

23  vesting of equity and severance wages.

24          (b)     MicaSense's termination of Torres' employment for purported "Just

25  Cause" is inconsistent with the contractual definition and was done improperly and in bad faith

26  in an attempt to (i) avoid providing Torres's with the compensation and benefits to which he is

27  due and (ii) deprive him of equity rights and call-put value.

ANSWER, COUNTERCLAIMS AND THIRD-PARTY
COMPLAINT BY GABRIEL TORRES - 22
2:18-cv-00867-RSL

**SAVITT BRUCE & WILLEY LLP**
1425 Fourth Avenue Suite 800
Seattle, Washington  98101-2272
(206) 749-0500

(c)     MicaSense's wrongful and inaccurate assertion that the UAV Company is a "Competing Enterprise" is an improper and bad faith attempt to benefit Parrot S.A. and/or SenseFly and to prevent Torres from obtaining gainful employment.

(d)     The Indemnification Agreement, consistent with MicaSense's Articles of Incorporation, broadly provides to the fullest extent permitted by applicable law for the Company to indemnify and advance expenses to Torres.  This includes the obligation for MicaSense to "advance all Expenses incurred by or on behalf of Indemnitee in connection with any Proceeding by reason of Indemnitee's Corporate Status."

(e)     MicaSense's refusal of Torres' Advancement Request was done improperly and in bad faith in an attempt to avoid advancing Torres' expenses for this lawsuit. The purpose of this bad faith conduct—as evidenced by Plaintiffs' contemporaneous filing of the FAC with the removal of the breach of fiduciary duty claim—was to create leverage and an advantage for the Plaintiffs in this lawsuit.

1.70    MicaSense's breach of the implied covenant of good faith and fair dealing has caused, and continues to cause, damage to Torres, in an amount to be proved at trial

## SEVENTH CAUSE OF ACTION

### (Tortious Interference with Contract – against Parrot S.A., Parrot Drones S.A.S., Seydoux and Labossière)

1.71    Torres realleges and incorporates by reference the responses of Paragraphs 1-59 and the allegations of Paragraphs 1.1 – 1.70 above.

1.72    The Employment Agreement is a valid contract.

1.73    Parrot S.A., Parrot Drones S.A.S., Seydoux and Labossière individually and collectively knew of this contract and intentionally interfered with it by causing MicaSense to (a) breach the Employment Agreement by purporting to terminate Torres for "Just Cause," and (b) by asserting that the UAV Company is a "Competing Enterprise" and thus preventing Torres from obtaining other employment.

1.74    Torres' Founder Common Stock Redemption Agreement is a valid contract.

ANSWER, COUNTERCLAIMS AND THIRD-PARTY
COMPLAINT BY GABRIEL TORRES - 23
2:18-cv-00867-RSL

1.75    Parrot S.A., Parrot Drones S.A.S., Seydoux and Labossière individually and collectively knew of this contract and intentionally interfered with it by causing Parrot S.A. to wrongfully decline the Escrow Release Request, thus preventing MicaSense from complying with its obligations under the Founder Common Stock Redemption Agreement.

1.76    The Indemnification Agreement is a valid contract.

1.77    Parrot S.A., Parrot Drones S.A.S., Seydoux and Labossière individually and collectively knew of this contract and intentionally interfered with it by causing MicaSense to act in bad faith and to breach the Indemnification Agreement by declining Torres' Advancement Request.

1.78    Torres has suffered damages as a result of the acts of tortious interference alleged herein in an amount to be proved at trial.

## EIGHTH CAUSE OF ACTION

### (Declaratory Judgment – against MicaSense)

1.79    Torres realleges and incorporates by reference the responses of Paragraphs 1-59 and the allegations of Paragraphs 1.1 – 1.78 above.

1.80    There is an actual and substantial controversy between Torres and MicaSense regarding Torres' right to advancement under the Indemnification Agreement and MicaSense's obligation regarding the same.  Torres and MicaSense have adverse legal interests with respect to this controversy and the referenced contract.  This controversy is ripe and justiciable; *e.g.*, Torres made an Advancement Request with respect to Expenses incurred and to be incurred in this lawsuit and MicaSense—as represented by the same attorneys who are Plaintiffs' counsel herein—denied Torres's Advancement Request.

1.81    This Court has jurisdiction to resolve the controversy pursuant to 28 U.S.C. §2201.

1.82    Torres is entitled to entry of a judgment declaring the rights and obligations of the parties to the Indemnification Agreement, including but not limited to MicaSense's advancement obligation to him with respect to the instant lawsuit.

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington  98101-2272
(206) 749-0500

## JURY DEMAND

Pursuant to FRCP 38(b), Torres demands a jury trial for all issues so triable.

## RELIEF REQUESTED

WHEREFORE, Gabriel Torres respectfully requests the following relief:

A.   That Plaintiffs' claims be dismissed with prejudice;

B.   For damages against Parrot S.A., Parrot Drones S.A.S., Henri Seydoux, Gilles Labossière and MicaSense, Inc. in an amount to be proved at trial;

C.   For double damages against MicaSense, Seydoux and Labossière in accordance with RCW 49.52.070;

D.   For attorney's fees and costs to the maximum extent permitted by statute and contract;

E.   For judgment declaring the rights and obligations of the parties to the Indemnification Agreement, including but not limited to MicaSense's advancement obligation to Torres with respect to the instant lawsuit;

F.   For prejudgment interest; and

G.   For any other relief such as the Court deems just and proper.

 DATED: August 7, 2018.

SAVITT BRUCE & WILLEY LLP


By   /s/ Stephen C. Willey
     Stephen C. Willey, WSBA #24499
     1425 Fourth Ave., Suite 800
     Seattle, WA 98110
     Telephone: 206.749.0500
     Facsimile:  206.749.0600
     Email:  swilley@sbwllp.com

*Attorneys for Defendant and Third-Party Complaint Plaintiff Gabriel Torres*

ANSWER, COUNTERCLAIMS AND THIRD-PARTY
COMPLAINT BY GABRIEL TORRES - 25
2:18-cv-00867-RSL

1

## <u>CERTIFICATE OF SERVICE</u>

2

I hereby certify that on August 7, 2018, I electronically filed the foregoing with the

3

Clerk of the Court using the CM/ECF system which will send notification of such filing to all

4

counsel of record.

5

DATED this 7th day of August 2018 at Seattle, Washington.

6

7

*Gabriella Sanders*
Gabriella Sanders

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

CERTIFICATE OF SERVICE
2:18-cv-00867-RSL